**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ERIC G. WALSH,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA DEPARTMENT OF PUBLIC HEALTH; BRENDA FITZGERALD, Commissioner of the Georgia Department of Public Health, in her official and individual capacities; JAMES HOWGATE, Chief of Staff, Georgia Department of Public Health, in his official and individual capacities; KATE PFIRMAN, Chief Financial Officer, Georgia Department of Public Health, in her official and individual capacities; PATRICK O'NEAL, Director of Health Protection, Georgia Department of Public Health, in his official and individual capacities; LEE RUDD, Director of Human Resources, Georgia Department of Public Health, in his official and individual capacities,<br><br>Defendants. | CIVIL ACTION FILE NO:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Eric Walsh, M.D., Dr.Ph. ("Plaintiff" or "Dr. Walsh"), states his complaint against the Georgia Department of Public Health ("DPH"), and officers and employees of DPH, namely Brenda Fitzgerald, James Howgate, Kate Pfirman,

Patrick O'Neal and Lee Rudd, both in their official and individual capacities ("DPH Officials") (collectively with DPH, "Defendants"), for discrimination based on his religion and other civil rights violations, and shows the Court as follows:

## INTRODUCTION

1.

This is a civil rights action for reinstatement, money damages, punitive damages, nominal damages, injunctive relief, and equitable and declaratory relief brought pursuant to federal statutory law, particularly Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and 42 U.S.C. §§ 1983 and 1988, and the United States Constitution, particularly the First and Fourteenth Amendments.

2.

Dr. Walsh's complaint arises from DPH's unlawful termination of his employment based in whole or in part upon his religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

3.

In addition to being a medical doctor and noted leader in public health, Dr. Walsh is a committed Christian whose sincerely held religious beliefs and convictions are in accordance with historic Christian faith, beliefs and doctrine.

4.

The week after hiring Dr. Walsh as a District Health Director in May 2014, DPH began to investigate and evaluate Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

5.

DPH discovered posted on the internet numerous sermons and other public addresses Dr. Walsh, as a committed Christian and lay minister, had delivered in years past.

6.

During these sermons and other public addresses Dr. Walsh had shared his religious beliefs and/or viewpoints on social, cultural and other matters of public concern.

7.

DPH requested that Dr. Walsh provide internet links to the more "problematic" sermons and other public addresses available on the internet.

8.

Dr. Walsh provided DPH with internet links to several of his sermons and other public addresses.

9.

DPH officers and other employees spent hours reviewing these and other of Dr. Walsh's sermons and other public addresses available online, analyzing and taking notes on his religious beliefs and viewpoints on social, cultural and other matters of public concern as expressed in the sermons and other public addresses.

10.

On May 15, 2014, the day after completing the investigation into Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices, DPH officials held a self-described "hastily arranged" meeting to discuss the future of Dr. Walsh's employment with DPH.

11.

At the May 15, 2014 meeting DPH's Director of Human Resources reported on the results of the investigation into Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

12.

The discriminatory intent and the tenor of the May 15, 2014 meeting compelled DPH's general counsel to warn not once, but twice, during the same meeting that under federal law Dr. Walsh's religious beliefs could play no role in any employment decision by DPH.

13.

Regardless, DPH determined that due to his religious faith, beliefs, speech, viewpoint, expression, association and/or practices Dr. Walsh could not continue his employment with DPH.

14.

DPH terminated Dr. Walsh's employment the next day.

15.

After filing a complaint with the EEOC and receiving permission to bring this suit, Dr. Walsh filed this lawsuit against DPH and the DPH officers and employees who participated in his wrongful discharge.

16.

Defendants DPH Officials participated directly in or were complicit in or causally connected to the wrongful investigation of and discharge of or refusal to hire Dr. Walsh for his religious faith, beliefs, speech, viewpoint, expression, association and/or practices. Defendants DPH Officials acted in bad faith towards Dr. Walsh and have shown a deliberate indifference to the law and Dr. Walsh's rights. These individual defendants violated an actual, clearly established constitutional or federal statutory right or rights under existing law and their conduct was objectively unreasonable in light of law clearly established at the time

of their conduct.

17.

Defendants discriminated against Dr. Walsh because of his religion in violation of Title VII of the Civil Rights Act of 1964, as amended. As a result of Defendants' unlawful discrimination and wrongful conduct, Dr. Walsh seeks prospective relief (i.e., job reinstatement), damages for lost earnings and reduced earning capacity in the future, and compensatory damages, including emotional distress and punitive damages, costs and attorneys' fees, among other relief.

18.

Moreover, this is also a civil rights action under the United States Constitution. Defendants' actions constitute unconstitutional violations of 42 U.S.C. § 1983 and the freedoms of speech, expression and association, the free exercise of religion, and the right to equal protection of the laws under the First and Fourteenth Amendments to the U.S. Constitution. As a result of Defendants' conduct depriving Dr. Walsh of his constitutional rights, Dr. Walsh seeks injunctive relief (including job reinstatement), recovery of all resulting compensatory, punitive and nominal damages, declaratory judgment, costs and attorneys' fees, among other relief.

19.

Defendant DPH's deliberate indifference and failure to act after having knowledge and notice of the unlawful and discriminatory conduct and actions of Defendants DPH Officials amount to an endorsement and adoption of their unconstitutional conduct and constitutes a continuing violation of Dr. Walsh's Constitutional rights.

**JURISDICTION AND VENUE**

20.

This action arises under federal statutory law, particularly Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. §§ 1983 and 1988, and the United States Constitution, particularly the First and Fourteenth Amendments.

21.

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331and 1343.

22.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the violations of Plaintiff's civil rights alleged herein were committed in this judicial district.

23.

This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k).

**PARTIES**

24.

Plaintiff Eric Walsh is a medical doctor who resides in California. He is a former employee of Defendant DPH. He submits himself to the jurisdiction of the Court.

25.

At all times relevant to this action, Dr. Walsh was an employee and Defendant DPH was an employer within the meaning of 42 U.S.C. § 2000e(b) & (f).

26.

Defendant DPH is a public entity authorized by and constituting a political subdivision or agency of the State of Georgia. Defendant DPH is headquartered in Atlanta, Georgia. Defendant DPH is being sued in its name and own right as the former employer of Dr. Walsh under Title VII of the Civil Rights Act of 1964, as amended (Count One of the Substantive Claims).

27.

Defendant DPH is subject to the jurisdiction of this Court and may be served with a copy of the summons and complaint through the Commissioner of the Department of Public Health, Brenda Fitzgerald, M.D., at 2 Peachtree Street, 15th Floor, Atlanta, Georgia 30303.

28.

Defendant Brenda Fitzgerald, M.D., is, and was at all times relevant to this Complaint, Commissioner of DPH and responsible for DPH's administration and policy-making, including the policies, practices, customs and procedures described herein, and for their enforcement against Dr. Walsh. She is sued in her official capacity for prospective relief for federal constitutional violations and in her individual capacity for her wrongful conduct for the federal constitutional violations as described herein.

29.

Defendant James Howgate, MPH, is, and was at all times relevant to this Complaint, Chief of Staff for the Georgia Department of Public Health. He is sued in his official capacity for prospective relief for federal constitutional violations and in his individual capacity for his wrongful conduct for the federal constitutional violations as described herein.

30.

Defendant Kate Pfirman is, and was at all times relevant to this Complaint, Chief Financial Officer for the Georgia Department of Public Health and oversees and oversaw the DPH Human Resources department. She is sued in her official capacity for prospective relief for federal constitutional violations and in her individual capacity for her wrongful conduct for the federal constitutional violations as described herein.

31.

Defendant Patrick O'Neal, M.D., is, and was at all times relevant to this Complaint, Director of Health Protection for the Georgia Department of Public Health. He is sued in his official capacity for prospective relief for federal constitutional violations and in his individual capacity for his wrongful conduct for the federal constitutional violations as described herein.

32.

Defendant Lee Rudd is, and was at all times relevant to this Complaint, Director of Human Resources for the Georgia Department of Public Health. He is sued in his official capacity for prospective relief for federal constitutional violations and in his individual capacity for his wrongful conduct for the federal constitutional violations as described herein.

## NATURE OF CLAIMS ASSERTED AGAINST INDIVIDUAL DEFENDANTS

33.

Defendants DPH Officials directly participated in, were complicit in and/or were causally connected to the wrongful, unlawful and discriminatory investigation into Dr. Walsh's religious beliefs, expression, viewpoint, exercise and/or association conducted to determine whether DPH would terminate or refuse to hire Dr. Walsh.

34.

Defendants DPH Officials directly participated in, were complicit in and/or were causally connected to the wrongful termination of or refusal to hire Dr. Walsh due to Dr. Walsh's religious beliefs, expression, viewpoint, exercise and/or association.

35.

By DPH policy, practice and/or custom Defendants Howgate, Pfirman and/or O'Neal had the authority and discretion to terminate or refuse to hire Dr. Walsh.

36.

On information and belief Defendant Fitzgerald was in telephone, email and/or other communication with DPH officers and personnel at all relevant times herein and approved of, participated in, was complicit in and/or causally connected to the unlawful and discriminatory investigation of Dr. Walsh's religious beliefs, expression, viewpoint, exercise and/or association and the unlawful and discriminatory decision to terminate or refuse to hire Dr. Walsh due to his religious beliefs, expression, viewpoint, exercise and/or association.

37.

Defendants DPH Officials were aware that Dr. Walsh's sermons and other public addresses expressed his religious beliefs and/or viewpoints on matters of public concern unrelated to his job at DPH or with any other employer, did not interfere with internal or external operations or with internal order and discipline of DPH or any other employer and were not likely to do so.

38.

No reasonable official would consider an employee's religious beliefs, expression, viewpoint, exercise and/or association as an appropriate and/or lawful motivating factor to terminate or refuse to hire an employee.

39.

Defendants DPH Officials had fair notice that their actions violated clearly established law.

40.

Defendants DPH Officials have shown a deliberate indifference to the law and Dr. Walsh's rights.

41.

Defendant DPH Officials acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

42.

Defendants DPH Officials have violated an actual, clearly established constitutional and/or federal statutory right under existing law.

43.

The conduct of Defendants DPH Officials was objectively unreasonable in the light of clearly established law at the time of their conduct.

44.

Defendants DPH Officials were either personally involved in the constitutional violations or were causally connected to the constitutional violations alleged herein.

45.

Defendants DPH Officials understood or should have understood their actions violated the law under the circumstances.

46.

Defendants DPH Officials did not act in good faith toward Dr. Walsh. Specifically, Defendants DPH Officials acted in bad faith in performing their duties when they terminated or refused to hire Dr. Walsh, or participated in or were complicit in or causally connected to the termination of or refusal to hire Dr. Walsh, because of Dr. Walsh's religious beliefs, expression, viewpoint, exercise and/or association. Similarly, Defendants DPH Officials acted in bad faith in performing their duties when they investigated, or participated in or were complicit in or causally connected to the investigation of, Dr. Walsh's religious beliefs, expression, viewpoint, exercise and/or association to determine whether to terminate or refuse to hire Dr. Walsh because of same.

47.

A reasonably prudent official, under the same or similar circumstances, could not have believed that his or her conduct was justified based on the information he or she possessed when the conduct occurred.

48.

The individual Defendants acted in furtherance of DPH's wrongful and unconstitutional policy(ies), custom(s) and/or practice(s), which were the moving force behind each of the individual Defendants' actions.

49.

With regard to his federal constitutional claims against the individual Defendants in their official capacities Plaintiff seeks only prospective relief (i.e., job reinstatement, injunctive and declaratory relief) and attorneys' fees and costs.

50.

Plaintiff does not assert a claim for a violation of Title VII of the Civil Rights Act of 1964, as amended, against the individual Defendants in their individual capacities.

## FACTUAL ALLEGATIONS

51.

In January 2014 Dr. Walsh was the Director of Public Health for the City of Pasadena, California as well as the Health Officer for the Pasadena Public Health Department.

52.

In January 2014, in response to a position advertisement, Dr. Walsh applied

for employment with DPH as a District Health Director.

53.

In or about February and March of 2014, Dr. Walsh participated in interviews with several decision-makers within the Department of Public Health, including Defendant Fitzgerald.

54.

Dr. Walsh was the highest ranked candidate for the District Health Director position.

55.

Dr. Walsh received an average interview score of "Highly Acceptable" – the highest possible ranking – by interviewers Rod Weaver, Rob Jones, Curtis Kingsly, Susan Shook, Russ Flynn, Susan Brewster, Steve Tonya, and Louise Hamrick.

56.

The issue of outside employment was never raised during the interview process.

57.

Dr. Walsh was one of the highest qualified candidates for a District Health Director that DPH had ever interviewed or hired.

58.

Dr. Walsh had served on the President's Advisory Council on HIV/AIDS (PACHA); as a member of the National Advisory Committee (NAC) to the Center for Excellence in Sexual Health at the Satcher Leadership Institute, Morehouse School of Medicine, Atlanta, Georgia; as a board member of the Latino Health Collaborative; and as Medical Director for Loma Linda University East Campus Urgent Care, among several other positions of prestige and responsibility requiring proven leadership and professional excellence.

59.

As Director of Public Health for the City of Pasadena, Dr. Walsh brought in millions of dollars for HIV/AIDS medical programs and HIV/AIDS mental health programs, and started a food bank for people suffering from HIV/AIDS.

60.

In 2013, as Director of Public Health for the City of Pasadena, Dr. Walsh opened the Michael D. Antonovich Dental Clinic, what is believed the first ever city-run dental clinic in the State of California for low income families dealing with HIV/AIDS.

61.

A DPH physician and District Health Director tasked with interviewing Dr.

Walsh was so impressed by his ability, education, experience and accomplishments that he lobbied Defendant Fitzgerald, the Commissioner of the DPH, to increase Dr. Walsh's potential salary because he felt "quite certain that we will not be seeing a more qualified candidate for [District Health Director] any time in the near future."

62.

As a result of his outstanding credentials and interview performance, Defendant DPH extended to Dr. Walsh an offer of employment on or about May 7, 2014, and sent him a virtually identical offer letter May 8, 2014.

63.

Dr. Walsh accepted the position and was hired.

64.

Dr. Walsh's salary as District Health Director was set at $150,000 with a tentative start date of June 16, 2014.

65.

The only conditions placed on Dr. Walsh's employment were verification of his education and a "background investigation," which could include a drug and alcohol screen.

66.

Per DPH Policy HR-03102 (Selection Policy), a Selective Service registration check and a criminal history check could be conducted, as well.

67.

On May 9, 2014, Dr. Walsh received a congratulatory email from Ms. Louise Hamrick, one of his interviewers and the North Georgia Health District Deputy Director, welcoming Dr. Walsh as the new District Health Director.

68.

On May 9, 2014, Dr. Walsh received a congratulatory email from Dr. Jack Kennedy, M.D., the interim District Health Director, welcoming Dr. Walsh as the new District Health Director.

69.

On May 13, 2014 DPH spokesperson Jennifer King reported to the media that Dr. Walsh had been hired by DPH.

70.

Dr. Walsh began making plans to move his family to Georgia.

71.

In addition to being a medical doctor and noted leader in public health, Dr. Walsh is a devout Christian and a member of the Seventh Day Adventist Church.

72.

Dr. Walsh's religious beliefs and convictions are in accordance with historic Christian faith, beliefs and doctrine.

73.

Dr. Walsh respects others and their beliefs, to include those who differ from or disagree with him, and hopes for the same respect and tolerance in turn. Dr. Walsh is a proponent of inclusivity and tolerance both in the workplace and society in general. He has supervised a variety of diverse workplaces throughout his career. He appreciates the variety of opinions and perspectives that a diverse culture and a diverse workplace bring. Dr. Walsh believes all individuals have human rights that, like the Declaration of Independence proclaims, are "unalienable" and endowed "by their Creator."

74.

While Dr. Walsh served as Director of Public Health for the City of Pasadena, the city health department was one of the most diverse departments in the city. The department had employees of every race and many ethnic groups. Many members of the LGBT community joined the department's workforce, all of whom Dr. Walsh was ultimately responsible for hiring.

75.

While Dr. Walsh served as Director of Public Health for the City of Pasadena, the city health department served as many or more people from the LGBT community than any other department in the city.

76.

As part of his sincerely held religious beliefs and those of the Seventh Day Adventist church, Dr. Walsh believes in expressing his faith, beliefs and religious viewpoint to others in public settings and relating God's truth to all matters and areas of life.

77.

Dr. Walsh's religious faith requires that he believe, profess, and teach others about historical Christian faith, doctrine and beliefs and teach others to apply God's truth to all areas of life.

78.

In accordance with his sincerely held religious beliefs and on his own time, Dr. Walsh has given sermons and other public addresses during which he expressed his sincerely held religious beliefs and viewpoints, and the beliefs of the Seventh Day Adventist church, on social and cultural issues such as health, music, marriage, sexuality, world religions, science, politics and other matters of public

concern.

79.

During the interview process Dr. Walsh told Defendants that he was a lay minister and had delivered sermons and other public addresses, some of which were available online.

80.

Dr. Walsh was not required or obligated to disclose his employment as an associate pastor to the City of Pasadena while employed at the City, and from the beginning he had disclosed to the City and the City was well aware that he was also employed and worked during his off time a couple Sundays a month as a private physician at a local urgent care facility.

81.

On or about May 13, 2014, the week after hiring Dr. Walsh as a District Health Director, DPH became concerned about Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices and began to investigate and evaluate Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

82.

DPH discovered posted on the internet some of Dr. Walsh's sermons and

other public addresses.

83.

Beginning on or about May 13 and continuing until May 16, 2014, Defendants, their agents and employees, engaged in a concerted effort to uncover information regarding Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices by, among other things, listening to Dr. Walsh's sermons and other public addresses available online, taking notes and reporting back to DPH on the content of and beliefs and viewpoints expressed in Dr. Walsh's sermons and other public addresses.

84.

During this investigation of Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices, multiple DPH personnel, to include Defendants Howgate, Pfirman and Rudd, spent and were required to spend hours reviewing Dr. Walsh's sermons and other public addresses found posted online.

85.

On or about May 13, 2014, per a late-night email from DPH Director of Communications Ryan Deal to Defendant Rudd, on information and belief Defendant Fitzgerald spoke with DPH Director of Communications Ryan Deal

about DPH's continuing investigation into Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

86.

In an unsigned memorandum, one DPH officer or employee reported spending "eight hours viewing videos and listening to audio clips" of Dr. Walsh's sermons or other public addresses and warned against taking adverse employment action against Dr. Walsh "on the basis of discrimination." See Exhibit A.

87.

On May 14, 2014 Defendant Howgate called Dr. Walsh to discuss one or more of Dr. Walsh's sermons or other public addresses Defendant Howgate had viewed or listened to (presumably online).

88.

During the May 14, 2014 phone conversation, referring to the religious beliefs and/or viewpoints Dr. Walsh expressed in the sermon(s) or public address(es), Defendant Howgate told Dr. Walsh words to the effect that "this kind of thing would not be accepted in public health" and/or "you can't preach that and work in the public health field."

89.

During the May 14, 2014 phone conversation, Defendant Howgate requested

Dr. Walsh provide him online access to the most problematic sermons or public addresses available on the internet.

90.

Dr. Walsh provided Defendant Howgate with internet links to several of his sermons or other public addresses.

91.

During the May 14, 2014 phone conversation Defendant Howgate told Dr. Walsh words to the effect of "let's see if we can work through this" or "let's see if we can still get you here," and implied that Dr. Walsh's employment with DPH was likely at an end due to his religious beliefs and/or viewpoints expressed in his sermons and other public addresses.

92.

Late in the afternoon of May 14, 2014 Defendant Rudd, with the knowledge, consent and participation of Defendant Pfirman, emailed internet links of several of Dr. Walsh's sermons or other public addresses to multiple DPH personnel, to include Defendant Pfirman. See Exhibit B.

93.

Defendant Rudd required they, to include Defendant Pfirman, "take a couple of hours each" *that night* to view their assigned links to Dr. Walsh's sermons or

other public addresses and that they "listen vary [sic] carefully and make notes" of the religious beliefs and viewpoints expressed by Dr. Walsh. See Exhibit B.

94.

Defendants Rudd and Pfirman and the other DPH personnel viewed and/or listened to the assigned sermons and other public addresses of Dr. Walsh that night and reported their findings to Defendant Rudd.

95.

The very next morning, on May 15, 2014, DPH Officials (except for Defendant Fitzgerald) and others held a self-described "hastily arranged" meeting to discuss the future of Dr. Walsh's employment with DPH.

96.

At the May 15, 2014 "hastily arranged" meeting Defendant Rudd reported on the results of the investigation into Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

97.

The unlawful and discriminatory intent and tenor of the May 15, 2014 meeting compelled DPH general counsel Sidney Barrett to warn not once, but twice, during the same meeting that under federal law Dr. Walsh's religious beliefs could play no role in any employment decision by DPH.

98.

On May 15, 2014 during or following the "hastily arranged" meeting to discuss the future of Dr. Walsh's employment with DPH, Defendants Howgate, Pfirman and O'Neal decided to terminate or refuse to hire Dr. Walsh.

99.

By DPH policy, practice and/or custom Defendants Howgate, Pfirman and/or O'Neal had the authority and discretion to terminate or refuse to hire Dr. Walsh.

100.

The next day, on May 16, 2014, DPH terminated Dr. Walsh's employment, purporting to rescind DPH's job offer.

101.

On information and belief Defendant Fitzgerald was in telephone, email and/or other communication with DPH officers and personnel at all relevant times herein and approved of, participated in, was complicit in and/or causally connected to the decision to terminate or refuse to hire Dr. Walsh due to his religious beliefs, expression, viewpoint, exercise and/or association.

102.

Defendants' unlawfully terminated or refused to employ Dr. Walsh because

of his religion and/or religious beliefs, expression, viewpoint, exercise, and/or association in violation of clearly established law of which a reasonable official would be aware.

103.

On May 16, 2014 Defendants Pfirman and O'Neal called Dr. Walsh to alert him to his termination, leaving him a voicemail during which they laughed and joked about how he was to be terminated or refused employment. See Exhibit C.

104.

On May 16, 2014, Defendant Pfirman sent Dr. Walsh an email purporting to rescind DPH's job offer. The email stated no reason for the adverse decision.

105.

On May 16, 2014, after receipt of the voicemail and email, Dr. Walsh called Defendant Pfirman who confirmed the adverse employment action.

106.

On May 16, 2014, DPH released an official public statement announcing it had "retracted" its employment offer to Dr. Walsh.

107.

On May 16, 2014, Defendant Fitzgerald sent an email to DPH Director of Communications Ryan Deal approving of DPH's public announcement in which

DPH purported to have "retracted" its employment offer to Dr. Walsh.

108.

Defendants' decision to terminate Dr. Walsh or to rescind his job offer came just 1 or 2 days after Defendant learned about the content of some of Dr. Walsh's sermons and other public addresses posted online in which Dr. Walsh expressed his sincerely held religious beliefs on social, cultural and other matters of public concern.

109.

Dr. Walsh's sermons and other public addresses referenced herein expressed his religious beliefs and/or viewpoints and the beliefs of the Seventh Day Adventist church and were on matters of public concern unrelated to his job at DPH or with any other employer, did not interfere with internal or external operations or with internal order and discipline of DPH or any other employer and were not likely to do so.

110.

Defendants violated clearly established law of which a reasonable official would be aware when they investigated for employment purposes, and required other DPH personnel to investigate for employment purposes, Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

111.

Defendants violated clearly established law of which a reasonable official would be aware when they terminated or refused to hire Dr. Walsh due to his religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

112.

Defendants violated clearly established law of which a reasonable official would be aware by their concerted effort to uncover for employment purposes information regarding Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

113.

Defendants have a policy, practice and/or custom of investigating the religion and/or religious beliefs, expression, viewpoint, exercise, and/or association of some or all employees, applicants and/or conditional hires to determine eligibility for employment or continued employment with DPH. This policy, practice and/or custom, on its face and as applied to Dr. Walsh, violated and continues to violate clearly established law of which a reasonable official would be aware.

114.

Defendants have a policy, practice and/or custom of terminating or refusing

to hire employees, applicants and/or conditional hires based on religion and/or religious beliefs, expression, viewpoint, exercise, and/or association. This policy, practice and/or custom, on its face and as applied to Dr. Walsh, violated and continues to violate clearly established law of which a reasonable official would be aware.

115.

By terminating or refusing to hire Dr. Walsh because of his religion and/or sincerely held religious beliefs, expression, viewpoint, exercise, and/or association Defendants engaged and are engaging in religious viewpoint discrimination in violation of clearly established law of which a reasonable official would be aware.

116.

All of the acts of Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Georgia.

117.

Adhering to a religion, religious belief and/or religious viewpoint, and expressing a religious belief and/or viewpoint, and engaging in religious exercise and religious association are all protected by the First Amendment to the United

States Constitution.

118.

Defendants, by policy and practice, have not terminated or refused to hire other employees, applicants or conditional hires similarly situated to Dr. Walsh due to their religions and/or beliefs, expressions, viewpoints, exercises, activities and/or associations, religious or otherwise.

119.

Defendants, by policy and practice, have not terminated or refused to hire other employees, applicants or conditional hires similarly situated to Dr. Walsh due to their religions and/or beliefs, expressions, viewpoints, exercises, activities and/or associations, religious or otherwise, different from those of Dr. Walsh.

120.

The District Health Directors employed by DPH to oversee the approximately eight other health districts in the State of Georgia, or applicants or conditional hires for same, at all times relevant herein were and are similarly situated to Dr. Walsh.

121.

Because of Defendants' retaliation, intimidation, and deliberate indifference to the law and Dr. Walsh's constitutional rights, Dr. Walsh has suffered irreparable

injury and has been chilled in his exercise of his fundamental rights under law.

122.

Defendants had fair notice that their actions violated clearly established law.

123.

A motivating factor for Defendants' termination or refusal to hire Dr. Walsh was and is Dr. Walsh's religion and/or religious beliefs, expression, viewpoint, exercise and/or association.

124.

It was and is a violation of clearly established law to take an adverse employment action against Dr. Walsh, either terminating or refusing to hire him, based in whole or in part upon a motivating factor of Dr. Walsh's religion and/or religious beliefs, expression, viewpoint, exercise, and/or association.

125.

All of the acts of Defendants, their officers, agents, employees, and servants, alleged herein were approved by DPH and done consistent with DPH policy, practice and/or custom.

126.

Dr. Walsh has suffered and continues to suffer economic injury and irreparable harm from the unlawful and wrongful conduct of Defendants, as well as

pain and emotional distress, humiliation, loss of reputation, inconvenience and finding new employment, among others.

127.

Unless the Defendants' policies and practices challenged herein are enjoined, Dr. Walsh will continue to suffer economic injury and irreparable harm.

**ADMINISTRATIVE PROCEDURES**

128.

Dr. Walsh filed a Charge of Discrimination with the EEOC on September 9, 2014.

129.

The EEOC issued Dr. Walsh a notice of rights letter on January 21, 2016.

130.

Dr. Walsh has satisfied all administrative prerequisites to filing this civil action.

**SUBSTANTIVE CLAIMS**

131.

Based upon the foregoing facts, Dr. Walsh alleges six causes of action:

a. Count One: Religious Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, against Defendant DPH.

b. Count Two: Violation of the Right to Freedom of Speech under the First Amendment to the U.S. Constitution: Retaliation (42 U.S.C. § 1983) against Defendants DPH Officials.

c. Count Three: Violation of the Right to Freedom of Speech under the First Amendment to the U.S. Constitution: Viewpoint Discrimination, Overbreadth, Prior Restraint and Unbridled Discretion, and Unconstitutional Conditions (42 U.S.C. § 1983) against Defendants DPH Officials.

d. Count Four: Violation of the Right to the Free Exercise of Religion under the First Amendment to the U.S. Constitution and the No Religious Tests Clause of Art. VI, ¶ 3 of the U.S. Constitution (42 U.S.C. § 1983) against Defendants DPH Officials.

e. Count Five: Violation of the Right to Freedom of Association under the First Amendment to the U.S. Constitution (42 U.S.C. § 1983) against Defendants DPH Officials.

f. Count Six: Violation of the Right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983) against Defendants DPH Officials.

**Count One: Religious Discrimination in Violation of Title VII**
**(42 U.S.C. § 2000e *et seq*.)**

132.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

133.

According to 42 U.S.C. § 2000e-2(a), it is "an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion …."

134.

Defendants terminated or refused to employ Dr. Walsh because of his religion and/or sincerely held religious faith, sincerely held religious beliefs, religious speech, religious viewpoint, religious expression, religious association and/or religious exercise or practices, in violation of Title VII.

135.

Defendants' actions, policy and practice constitute an impermissible consideration of religion under 42 U.S.C. § 2000e-2(m) because Dr. Walsh's religion and/or sincerely held religious faith, sincerely held religious beliefs,

religious speech, religious viewpoint, religious expression, religious association and/or religious exercise or practices was a motivating factor in Defendants' termination of or refusal to hire Dr. Walsh.

136.

Defendants' discriminatory acts were done intentionally and with malice or reckless indifference to Dr. Walsh's rights under Title VII.

137.

Defendants' actions have caused Dr. Walsh to suffer both monetary and non-monetary damages, including without limitation mental and emotional pain and suffering.

138.

As a direct and proximate result of Defendants' discrimination, Dr. Walsh has incurred substantial damages. Accordingly, Dr. Walsh seeks recovery of the full measure of relief and damages against Defendant DPH as provided by Title VII, including without limitation job reinstatement, declaratory judgment, equitable damages, and compensatory damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

139.

This Count One is brought only against Defendant DPH. Defendant DPH

Officials are not defendants under this cause of action in either their official or individual capacities.

**Count Two: Violation of First Amendment Right to Freedom of Speech: Retaliation (42 U.S.C. § 1983)**

140.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

141.

The actions of the Defendants, as alleged herein, violate the First Amendment free speech rights of Dr. Walsh as guaranteed by the United States Constitution, and were carried out pursuant to DPH policies, practices and/or customs.

142.

Defendant DPH's policies, practices, and/or customs, on their face and as applied to Dr. Walsh, are in violation of the free speech rights of the First Amendment.

143.

The Free Speech Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, protects the right of government employees to speak as citizens on matters of public concern.

144.

The Free Speech Clause also protects the right of government employees to speak as citizens on matters unrelated to their work.

145.

In accordance with his sincerely held religious beliefs, Dr. Walsh delivered sermons and other public addresses in which he expressed his sincerely held religious beliefs and/or viewpoints on social, cultural and other matters of public concern.

146.

Defendants viewed online recordings of an unknown number of Dr. Walsh's sermons and other public addresses in which he expressed his sincerely held religious beliefs and/or viewpoints on social, cultural and other matters of public concern.

147.

Dr. Walsh's sermons and other public addresses occurred outside of work during his personal time and before applying to and being hired by DPH.

148.

Religious speech, including speech reflecting historic Christian beliefs and doctrine, is of concern to the public at large.

149.

Speech expressed from a religious viewpoint, including a viewpoint reflecting historic Christian beliefs and doctrine, on social, cultural, political and other matters is of concern to the public at large.

150.

Religious speech enjoys the highest protection of the First Amendment and is central to the meaning and purpose of the First Amendment, as evidenced by the Free Speech and Establishment Clauses.

151.

Dr. Walsh's sermons and other public addresses were completely unrelated to his government employment.

152.

Dr. Walsh's sermons and other public addresses did not threaten DPH's ability to administer public services and were not likely to do so.

153.

Dr. Walsh's sermons and other public addresses did not interfere with DPH's internal or external operations or with internal order and discipline and were not likely to do so.

154.

Dr. Walsh's right to and interest in delivering sermons and other public addresses as a private citizen outweighs any permissible interest Defendants may have in promoting the efficiency of public services.

155.

Defendants unlawfully terminated or refused to hire Dr. Walsh because his sermons and other public addresses contained a belief or beliefs, and/or a viewpoint or viewpoints, with which they disagreed or of which they disapproved.

156.

Dr. Walsh at all times performed his professional duties in a satisfactory manner.

157.

Dr. Walsh's sermons and other public addresses, and his beliefs or viewpoints expressed therein, were the sole reason Defendants terminated his employment or refused to hire him.

158.

Defendants would not have terminated or refused to hire Dr. Walsh in the absence of his sermons and other public addresses.

159.

Defendants' termination of or refusal to hire Dr. Walsh was not based on his political party affiliation or political beliefs.

160.

As Dr. Walsh's protected religious expression or religious viewpoint concerned topics and matters of public concern unrelated to his job, Defendants cannot rely upon their disagreement with or the popularity of Dr. Walsh's message(s) or viewpoint(s) to justify terminating or refusing to hire him for his protected speech or viewpoint.

161.

Nor can Defendants rely upon some community members' dislike of Dr. Walsh's message(s) or viewpoint(s) to justify censorship of his protected expression, as that would constitute an impermissible heckler's veto of protected speech.

162.

But pursuant to their policies, practices and/or customs, Defendants discharged or refused to hire Dr. Walsh because he expressed his religious beliefs and viewpoints on matters of public concern in sermons and other public addresses in his private capacity as a citizen on his own time during non-work hours which

did not threaten DPH's ability to administer public services, did not interfere with DPH's internal or external operations or with internal order and discipline and were not likely to do so.

163.

In so doing, Defendants have, by policy and practice, retaliated against Dr. Walsh because of his religious expression and/or viewpoint and deprived him of his First Amendment right to freely express his beliefs about issues of public concern that are unrelated to his job.

164.

The failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to adopt clear and concise written policies which protect the right of Dr. Walsh to free speech and expression caused the unlawful and discriminatory treatment by Defendants.

165.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, direct, control and supervise the actions and conduct of Defendants and the failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to do so has resulted in the violation of Dr. Walsh's Constitutional rights.

166.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to repudiate the unlawful and discriminatory actions and conduct of Defendants.

167.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to discipline Defendants for their unlawful and discriminatory conduct.

168.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to immediately act to remedy the unlawful and discriminatory conduct of Defendants.

169.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, control and supervise the actions and conduct of Defendants which amounts to deliberate indifference and a violation of Dr. Walsh's right to free speech and expression under the First Amendment.

170.

The deliberate indifference and failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to act after having knowledge and

notice of the unlawful and discriminatory conduct and actions of Defendants amounted to an endorsement and adoption of Defendants' unconstitutional conduct and constitutes a continuing violation of Dr. Walsh's Constitutional rights.

171.

Defendants DPH Officials, in their individual capacities, are not entitled to qualified immunity because they had fair notice that their actions and conduct violated clearly established law at the time that they took the actions in question, to include without limitation their terminating or refusing to hire Dr. Walsh.

172.

Defendants DPH Officials, in their individual capacities, acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

173.

Because Dr. Walsh's sermons and other public addresses of religious expression addressed matters of public concern unrelated to his job, or that expressed a religious viewpoint on matters of public concern unrelated to his job, Defendants must overcome strict scrutiny to justify censoring Dr. Walsh's speech and retaliating against him by terminating or refusing to hire him for same.

174.

Defendants have no rational interest, let alone a compelling interest, in terminating or refusing to hire Dr. Walsh based on his expression of personal religious beliefs and/or viewpoints.

175.

Defendants' policies and practice are not narrowly tailored or the least restrictive means to advance any legitimate or permissible interest Defendants may assert because Dr. Walsh's speech, viewpoint and /or expression did not and does not implicate any legitimate or permissible interests Defendants may assert.

176.

Defendants' termination of or refusal to hire Dr. Walsh based on his sincerely held religious beliefs or viewpoint expressed in his sermons and other public addresses, which were delivered outside of work, were unrelated to work, and that discussed matters of public concern, violates the Free Speech Clause of the First Amendment.

177.

Defendants' policies, practices, customs and actions do not leave open ample alternative channels of communication.

178.

By their policy and practice, Defendants, acting under color of state law, have explicitly and implicitly retaliated against Dr. Walsh for exercising his First Amendment right to freedom of speech and expression as incorporated against the States by the Fourteenth Amendment.

179.

Defendants' policies, practices, customs and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on Constitutionally protected speech and activity.

180.

Defendants, in violation of the free speech rights of the First Amendment, have caused, and will continue to cause, Plaintiff to suffer undue and actual hardship and irreparable injury.

181.

Defendants' policies, practices, and customs are vague.

182.

Dr. Walsh has no adequate remedy at law to correct the continuing deprivations of his most cherished constitutional liberties.

183.

As a direct and proximate result of Defendants' continuing violations of Dr. Walsh's rights, Dr. Walsh has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

184.

The actions of the Defendants violate the First Amendment rights of Dr. Walsh as guaranteed to Dr. Walsh by the United States Constitution and are further a violation of 42 U.S.C. § 1983.

185.

Because of these violations of these constitutionally guaranteed rights, Dr. Walsh seeks prospective relief only from Defendants DPH Officials in their official capacities, as follows: job reinstatement, declaratory judgment and injunctive relief, as well as attorneys' fees and costs, all as set out in the prayer for relief.

186.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective and other relief from Defendants DPH Officials in their individual capacities, to include without limitation: job reinstatement, declaratory

judgment, injunctive relief, equitable damages, compensatory and/or nominal damages, and punitive damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

187.

Defendant DPH, as a named entity, is not a defendant under this Count Two, with Dr. Walsh instead seeking prospective relief from all other Defendants in their official capacities.

**Count Three: Violation of First Amendment Right to Free Speech: Viewpoint Discrimination, Overbreadth, Prior Restraint and Unbridled Discretion, and Unconstitutional Conditions (42 U.S.C. § 1983)**

188.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

189.

The actions of the Defendants, as alleged herein, violate the First Amendment free speech rights of Dr. Walsh as guaranteed by the United States Constitution, and were carried out pursuant to DPH policies, practices and/or customs.

190.

Defendant DPH's policies, practices, and/or customs, on their face and as

applied to Dr. Walsh, are in violation of the free speech rights of the First Amendment.

191.

The Free Speech Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits the government from engaging in viewpoint discrimination.

192.

Viewpoint based restrictions on speech are presumptively unconstitutional and are subject to strict scrutiny even where citizens do not possess a constitutional right to speak in the first place.

193.

Pursuant to their policies, practices and/or customs, Defendants have allowed numerous employees, applicants or conditional hires similarly situated to Dr. Walsh to express their beliefs and viewpoints on both secular and religious issues.

194.

Defendants terminated or refused to hire Dr. Walsh because of his expression of his sincerely held religious beliefs and/or viewpoints on matters of public concern during sermons and other public addresses in his private capacity as

a citizen on his own time during non-work hours which did not threaten DPH's ability to administer public services and did not interfere with DPH's external or internal operations or with internal order and discipline and were not likely to do so.

195.

By terminating Dr. Walsh or refusing to hire him based on his expression of his sincerely held religious beliefs and/or religious viewpoints while allowing other, similarly-situated employees, applicants or conditional hires to express their beliefs and viewpoints on both secular and religious issues, Defendants have, by policy, practice and/or custom, treated Dr. Walsh's viewpoints and beliefs differently and unequally and engaged in viewpoint discrimination against Dr. Walsh.

196.

Defendants unlawfully terminated or refused to hire Dr. Walsh because his sermons and other public addresses contained a viewpoint or viewpoints with which they disagreed or of which they disapproved.

197.

Because Defendants have engaged in blatant viewpoint discrimination against Dr. Walsh, Defendants must overcome strict scrutiny to justify censoring

Dr. Walsh's speech by terminating or refusing to hire him for same.

198.

Defendants have no rational interest, let alone a compelling interest, in terminating or refusing to hire Dr. Walsh based on his expression of personal religious beliefs or viewpoints.

199.

Defendants have no rational, let alone compelling, reason for prohibiting or censoring Dr. Walsh's expression of his religious beliefs and/or viewpoints on matters of public concern, which are shared by millions of others across Georgia and the United States.

200.

Defendants' policies and practice are not narrowly tailored or the least restrictive means to advance any legitimate or permissible interest Defendants may assert because Dr. Walsh's speech, viewpoint and /or expression did not and does not implicate any legitimate or permissible interests Defendants may assert.

201.

The Free Speech Clause of the First Amendment also forbids the government from imposing overbroad restrictions on protected speech.

202.

To the extent Defendants' policies, practices and/or customs forbid Dr. Walsh and other employees from engaging in speech and/or expression on matters of public concern unrelated to their jobs that do not and will not likely disrupt the DPH's provision of public services or interfere with internal or external operations or with internal order and discipline, they are substantially overbroad and burden a vast array of expression protected by the First Amendment.

203.

The substantial overbreadth of Defendants' policies and practice chills, deters, and restricts Dr. Walsh's protected speech and/or expression, and that of other DPH employees not before the Court, on matters of public concern that are unrelated to their jobs that do not and will not likely disrupt the DPH's provision of public services or interfere with internal or external operations or with internal order and discipline .

204.

Indeed, after Dr. Walsh's termination, employees who share Dr. Walsh's Christian views are likely to avoid expressing their religious beliefs and/or viewpoints on matters of public concern that do not and will not likely disrupt the DPH's provision of public services or interfere with internal or external

operations or with internal order and discipline for fear of losing their livelihood, as are other employees who hold viewpoints on subjects unrelated to their jobs with which Defendants disagree.

205.

The Free Speech Clause of the First Amendment also forbids the government from imposing prior restraints on speech.

206.

Any prior restraint on speech bears a heavy presumption against its validity and must satisfy strict scrutiny.

207.

Defendants' policies and practice constitute prior restraints on speech because they prohibit or censure speech before it can take place.

208.

A large portion of the speech to which Defendants' prior restraint policies, practices and/or customs apply does not involve the subject matter of government employment and takes place outside of the workplace.

209.

Dr. Walsh's sermons and other public addresses, in particular, did not relate to his government employment but were prepared and delivered outside of

work during his personal time and related to matters of public concern unrelated to his work that did not and are not likely to disrupt the DPH's provision of public services or interfere with DPH internal or external operations or with internal order and discipline.

210.

Moreover, prior restraints on speech must not grant unbridled discretion to government officials.

211.

Defendants' policies, practices and/or customs provide unbridled discretion to Defendants and other officials.

212.

For example, Defendants' policies, practices and/or customs contain no objective guidelines or standards to limit officials' discretion in matters of employee speech thus leaving officials free to discriminate against Dr. Walsh's and other employees' protected viewpoints and expression.

213.

The decision whether Dr. Walsh and other employees may engage in protected speech is left entirely to the whim of Defendants DPH Officials and other DPH officers and personnel.

214.

Defendants' policies, practices and/or customs thus constitute invalid prior restraints on speech, both facially and as applied to Dr. Walsh, that violate the Free Speech Clause of the First Amendment.

215.

The unconstitutional conditions doctrine also prohibits the government from conditioning a benefit, such as government employment, on the relinquishment of First Amendment rights.

216.

Dr. Walsh and other employees retain the First Amendment right to believe as they will on religious matters and to act in accordance with those beliefs, including by expressing them publicly during personal time in their private capacity as citizens on matters of public concern unrelated to their employment that do not threaten or interfere with DPH's ability to administer public services or internal or external operations or internal order and discipline and are not likely to do so.

217.

By policy, practice and/or custom Defendants have unconstitutionally conditioned the receipt of a state benefit—specifically, government employment—

on Dr. Walsh's and other employees' surrendering of their First Amendment right to engage in protected expression.

218.

Defendants' imposition of this unconstitutional condition on public employment by policy, practice or custom, and enforcement thereof, chills, deters, and restricts Dr. Walsh and other employees from freely expressing their religious beliefs and/or viewpoints on matters of public concern by jeopardizing their livelihoods.

219.

The failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to adopt clear and concise written policies which protect these rights of Dr. Walsh caused the unlawful and discriminatory treatment by Defendants.

220.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, direct, control and supervise the actions and conduct of Defendants and the failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to do so has resulted in the violation of Dr. Walsh's Constitutional rights.

221.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to repudiate the unlawful and discriminatory actions and conduct of Defendants.

222.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to discipline Defendants for their unlawful and discriminatory conduct.

223.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to immediately act to remedy the unlawful and discriminatory conduct of Defendants.

224.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, control and supervise the actions and conduct of Defendants which amounts to deliberate indifference and a violation of the right to free speech and expression and other rights under the First Amendment.

225.

The deliberate indifference and failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to act after having knowledge and

notice of the unlawful and discriminatory conduct and actions of Defendants amounted to an endorsement and adoption of Defendants' unconstitutional conduct and constitutes a continuing violation of the Dr. Walsh's Constitutional rights.

226.

Defendants DPH Officials, in their individual capacities, are not entitled to qualified immunity because they had fair notice that their actions and conduct violated clearly established law at the time that they took the actions in question, to include without limitation their terminating or refusing to hire Dr. Walsh.

227.

Defendants DPH Officials, in their individual capacities, acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

228.

Defendants have no rational, let alone compelling, reason for censoring Dr. Walsh's speech and/or expression and terminating his employment or refusing to hire him.

229.

Defendants' policies and practice are not narrowly tailored or the least

restrictive means to advance DPH's legitimate or permissible interests because Dr. Walsh's speech and/or expression does not implicate any legitimate or permissible interests Defendants might assert.

230.

Defendants by policy, practice and/or custom, acting under color of state law, have prohibited Dr. Walsh and other employees from exercising their clearly established rights to freely speak on matters of public concern, to be free from viewpoint discrimination, to be free from overbroad restrictions on speech, to be free from prior restraints that grant officials unbridled discretion to censure speech, and to be free of unconstitutional conditions placed on government employment, all of which are secured by the First Amendment right to freedom of speech as incorporated against the States by the Fourteenth Amendment.

231.

Defendants policies, practices, customs and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on Constitutionally protected speech and activity.

232.

Defendants, in violation of the free speech rights under the First Amendment, have caused, and will continue to cause, Plaintiff to suffer undue and

actual hardship and irreparable injury.

233.

Defendants' policies, practices, and customs are vague.

234.

Dr. Walsh has no adequate remedy at law to correct the continuing deprivations of his most cherished constitutional liberties.

235.

As a direct and proximate result of Defendants continuing violations of Dr. Walsh's rights, Dr. Walsh has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

236.

The actions of the Defendants violate the First Amendment rights of Dr. Walsh as guaranteed to Dr. Walsh by the United States Constitution and are further a violation of 42 U.S.C. § 1983.

237.

Because of these violations of these constitutionally guaranteed rights, Dr. Walsh seeks prospective relief only from Defendants DPH Officials in their official capacities, as follows: job reinstatement, declaratory judgment and

injunctive relief, as well as attorney's fees and costs, all as set out in the prayer for relief.

238.

Because of these violations of these constitutionally guaranteed rights, Dr. Walsh seeks prospective and other relief from Defendants DPH Officials in their individual capacities, to include without limitation: job reinstatement, declaratory judgment, injunctive relief, equitable damages, compensatory and/or nominal damages, and punitive damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

239.

Defendant DPH, as a named entity, is not a defendant under this Count Three, with Dr. Walsh instead seeking prospective relief from all other Defendants in their official capacities.

**Count Four: First Amendment Right to the Free Exercise of Religion and No Religious Tests Clause of Art. VI, ¶ 3 of the Constitution (42 U.S.C. § 1983)**

240.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

241.

The actions of the Defendants, as alleged herein, violate Dr. Walsh's right to

free exercise and the no religious test rights of Dr. Walsh as guaranteed by the First Amendment to and Art. VI, ¶ 3 of the United States Constitution, respectively, and were carried out pursuant to DPH policies, practices and/or customs.

242.

Defendant DPH's policies, practices, and/or customs, on their face and as applied to Dr. Walsh, are in violation of the free exercise and no religious test rights of the First Amendment to and Art. VI, ¶ 3 of the United States Constitution, respectively.

243.

The Free Exercise Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, protects citizens' freedom to believe as they will and to make those beliefs publicly known.

244.

A fundamental purpose of the Free Exercise Clause is to render man's relation to his God no concern of the state such that citizens may believe and profess whatever religious doctrines or beliefs they desire.

245.

Under the Free Exercise Clause, no person can be punished by the government for entertaining or professing religious beliefs.

246.

Government action based upon disagreement with or disapproval of religious tenets or practices violates the Free Exercise Clause.

247.

Defendants, pursuant to their policies, practices and/or customs, explicitly and implicitly terminated or refused to hire Dr. Walsh based on disagreement with or disapproval of his religious exercise of expressing his religious views and beliefs in sermons and other public addresses on matters of public concern in his private capacity as a citizen on his own time during non-work hours which did not threaten DPH's ability to administer public services, interfere with DPH's internal or external operations or with internal order and discipline and were not likely to do so.

248.

Dr. Walsh's religious faith requires that he believe, profess, and teach others about historical Christian faith, doctrine and beliefs and teach others to apply God's truth to all areas of life.

249.

Defendants thus punished Dr. Walsh for entertaining and professing religious beliefs with which they disagreed or of which they disapproved.

250.

The Free Exercise Clause forbids the government from penalizing or discriminating against individuals or groups because they hold religious beliefs or engage in religious activities with which the government disagrees or disapproves.

251.

Moreover, the Free Exercise Clause forbids government from forcing citizens to choose between their religion and forfeiting benefits, such as government employment, and abandoning the precepts of their religion in order to maintain their jobs.

252.

But Defendants by policy, practice and/or custom forced Dr. Walsh to choose between fulfilling his religious obligations and forfeiting his government employment or abandoning the teachings of his Christian faith in order to maintain or assume his position as District Health Director.

253.

Defendants have, in effect, instituted by policy, practice and/or custom, under color of state law, the equivalent of a religious test for public employment that excludes from employment Dr. Walsh (and those like him) because he holds and professes in a public manner historical Christian faith, beliefs

and doctrine.

254.

This religious test for employment violates the No Religious Tests Clause of Article VI, ¶ 3 of the Constitution and the Free Exercise Clause of the First Amendment.

255.

In addition, the Free Exercise Clause forbids the government from imposing special disabilities based upon a citizen's religious views and exercises.

256.

Defendants did just that when they terminated or refused to hire Dr. Walsh in accordance with their policy, practice and/or custom, which disqualifies those like Dr. Walsh who hold and express historical Christian faith, beliefs and doctrine.

257.

The failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to adopt clear and concise written policies which protect the rights of Dr. Walsh to free exercise of religion and no religious test caused the unlawful and discriminatory treatment by Defendants.

258.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH,

failed to properly train, direct, control and supervise the actions and conduct of Defendants and the failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to do so has resulted in the violation of the Dr. Walsh's Constitutional rights.

259.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to repudiate the unlawful and discriminatory actions and conduct of Defendants.

260.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to discipline Defendants for their unlawful and discriminatory conduct.

261.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to immediately act to remedy the unlawful and discriminatory conduct of Defendants.

262.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, control and supervise the actions and conduct of Defendants which amounts to deliberate indifference and a violation of the rights

to free exercise of religion and no religious test under the First Amendment to and Art. VI, ¶ 3 of the United States Constitution, respectively.

263.

The deliberate indifference and failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to act after having knowledge and notice of the unlawful and discriminatory conduct and actions of Defendants amounted to an endorsement and adoption of Defendants' unconstitutional conduct and constitutes a continuing violation of the Dr. Walsh's Constitutional rights.

264.

Defendants DPH Officials, in their individual capacities, are not entitled to qualified immunity because they had fair notice that their actions and conduct violated clearly established law at the time that they took the actions in question, to include without limitation their terminating or refusing to hire Dr. Walsh.

265.

Defendants DPH Officials, in their individual capacities, acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

266.

Defendants' policies, practices and/or customs are not neutral because they

expressly target historical Christian religious exercise, beliefs, faith and doctrine, to include the religious exercise, faith, beliefs and doctrine of Dr. Walsh, and allow officials arbitrarily to decide what religious speech or exercise is permitted and what religious speech or exercise is proscribed.

267.

Defendants' policies, practices and/or customs are likewise not generally applicable because they do not ban public employees from engaging in private speech unrelated to their employment that do not express historical Christian beliefs, faith and doctrine and because they grant officials unbridled discretion to censor Dr. Walsh's religious expression and viewpoint while permitting other employees, applicants or conditional hires, similarly situated and otherwise, to express their personal views on religious and secular issues.

268.

Defendants have no rational, let alone compelling, reason for censoring or prohibiting Dr. Walsh's religious exercise of expressing his sincerely held religious beliefs and/or viewpoints in a public manner and terminating or refusing to hire him.

269.

Defendants' policies, practices and/or customs are not narrowly tailored or

the least restrictive means to advance any legitimate or permissible interests the Defendants may possess because Dr. Walsh's religious exercise does not implicate any legitimate or permissible interests Defendants might assert.

270.

Defendants' policies, practices and/or customs, both facially and as applied to Dr. Walsh, violate the Free Exercise Clause of the First Amendment to, and the No Religious Test Clause of Art. VI, ¶ 3 of, the U.S. Constitution as incorporated against the States by the Fourteenth Amendment, by invading his right of conscience and belief, effectively imposing a religious test for public employment that excludes those who hold and express historical Christian beliefs, faith and doctrine, and restricting the free exercise of his religion in a manner that is not neutral or generally applicable.

271.

Defendants policies, practices, customs and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on Constitutionally protected speech and activity.

272.

Defendants, in violation of the rights to free exercise and no religious test under the First Amendment to and Art. VI, ¶ 3 of the United States Constitution,

respectively, have caused, and will continue to cause, Plaintiff to suffer undue and actual hardship and irreparable injury.

273.

Defendants' policies, practices, and/or customs are vague.

274.

Dr. Walsh has no adequate remedy at law to correct the continuing deprivations of his most cherished constitutional liberties.

275.

As a direct and proximate result of Defendants continuing violations of Dr. Walsh's rights, Dr. Walsh has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

276.

The actions of the Defendants violate the First Amendment rights of Dr. Walsh as guaranteed to Dr. Walsh by the United States Constitution and are further a violation of 42 U.S.C. § 1983.

277.

Because of these violations of these constitutionally guaranteed rights, Dr. Walsh seeks prospective relief only from Defendants DPH Officials in their

official capacities, as follows: job reinstatement, declaratory judgment and injunctive relief, as well as attorney's fees and costs, all as set out in the prayer for relief.

278.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective and other relief from Defendants DPH Officials in their individual capacities, to include without limitation: job reinstatement, declaratory judgment, injunctive relief, equitable damages, compensatory and/or nominal damages, and punitive damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

279.

Defendant DPH, as a named entity, is not a defendant under this Count Four, with Dr. Walsh instead seeking prospective relief from all other Defendants in their official capacities.

**Count Five: Violation of First Amendment Right to Freedom of Association (42 U.S.C. § 1983)**

280.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

281.

The actions of the Defendants, as alleged herein, violate the First Amendment free association rights of Dr. Walsh as guaranteed by the United States Constitution, and were carried out pursuant to DPH policies, practices and/or customs.

282.

Defendant DPH's policies, practices, and/or customs, on their face and as applied to Dr. Walsh, are in violation of the freedom of association rights of the First Amendment.

283.

The First Amendment, incorporated and made applicable to the states by the Fourteen Amendment, protects the right of citizens to join together to promote or express a message, viewpoint or belief.

284.

Dr. Walsh's church and denomination are expressive associations that adhere to historical Christian beliefs, faith and doctrine and regularly express those beliefs both at religious meetings and in the community at large to relate God's truth to all areas of life.

285.

By expressing his religious beliefs and/or views on matters of public concern such as health, music, marriage, sexuality, world religions, science, politics and other topics in sermons and other public addresses, Dr. Walsh acted as an extension of his church and denomination and participated in their efforts to relate God's truth to all areas of life.

286.

As a member of his church and denomination and participating in the church's and/or denominations efforts to express the church's and/or denominations religious belief, faith and doctrines to the church and public at large, and to relate God's truth in all areas of life to the church and public at large, Dr. Walsh engages in an expressive association with his church and/or denomination.

287.

Dr. Walsh's efforts to express to the church and/or denomination and others the religious beliefs and viewpoints of the church and/or denomination in sermons and other public addresses on any number of topics and matters of public concern occur and occurred in his private capacity as a citizen on his own time during non-work hours which does and did not threaten DPH's ability to administer public

services, does not and did not interfere with DPH's internal or external operations or with internal order and discipline and were not likely to do so.

288.

Because Dr. Walsh's expressive association concerned topics of public concern unrelated to his work, Defendants must overcome strict scrutiny to justify censoring, chilling and infringing on his expression and expressive association by terminating or refusing to hire him.

289.

Defendants cannot rely upon their disagreement with or the popularity of Dr. Walsh's message or viewpoint to justify discharging or refusing to hire him for his speech, viewpoint or expressive association.

290.

Pursuant to their policies, practices and/or customs Defendants terminated or refused to hire Dr. Walsh because he expressed historic Christian religious beliefs and views on matters of public concern in association with his church and/or denomination in his capacity as a private citizen on his own time during non-work hours which does and did not threaten DPH's ability to administer public services, and does not and did not interfere with DPH's internal or external operations or with internal order and discipline and were not likely to do so.

291.

In so doing, Defendants have, by policy and practice, deprived Dr. Walsh of his right to freely associate with others to speak about issues of public concern on matters unrelated to his job.

292.

The failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to adopt clear and concise written policies which protect the freedom of association rights of Dr. Walsh caused the unlawful and discriminatory treatment by Defendants.

293.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, direct, control and supervise the actions and conduct of Defendants and the failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to do so has resulted in the violation of Dr. Walsh's Constitutional rights.

294.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to repudiate the discriminatory and unlawful actions and conduct of Defendants.

295.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to discipline Defendants for their discriminatory and unlawful conduct.

296.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to immediately act to remedy the unlawful and discriminatory conduct of Defendants.

297.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, control and supervise the actions and conduct of Defendants which amounts to deliberate indifference and a violation of the right to freedom of association under the First Amendment.

298.

The deliberate indifference and failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to act after having knowledge and notice of the unlawful and discriminatory conduct and actions of Defendants amounted to an endorsement and adoption of Defendants unconstitutional conduct and constitutes a continuing violation of the Dr. Walsh's Constitutional rights.

299.

Defendants DPH Officials, in their individual capacities, are not entitled to qualified immunity because they had fair notice that their actions and conduct violated clearly established law at the time that they took the actions in question, to include without limitation their terminating or refusing to hire Dr. Walsh.

300.

Defendants DPH Officials, in their individual capacities, acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

301.

Defendants have no rational, let alone compelling, reason for censoring Dr. Walsh's religious speech and expressive association and terminating or refusing to hire him because of same.

302.

Defendants' policies and practice are not narrowly tailored or the least restrictive means to advance any legitimate or permisible interest Defendants may possess because Dr. Walsh's speech and expressive association does not implicate any legitimate or permissible interests Defendants might assert.

303.

Defendants' unconstitutional actions and policies chilled Dr. Walsh's expressive association with his church and denomination when they resulted in his termination or their refusal to hire him.

304.

Defendants' policies, practices and/or customs of prohibiting or censoring Dr. Walsh's religious expression and expressive association on matters of public concern unrelated to his job, which expression Dr. Walsh engaged in as part of an expressive association with his church and/or denomination, violates Dr. Walsh's clearly established right to freedom of association, which is secured by the First Amendment.

305.

Defendants, acting pursuant to their policies, practices and/or customs,, under color of state law, explicitly and implicitly retaliated against Dr. Walsh for exercising his clearly established right to freedom of association as secured by the First Amendment as incorporated against the States by the Fourteenth Amendment.

306.

Defendants policies, practices, customs and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on

Constitutionally protected speech, association and activity.

307.

Defendants, in violation of the right to freedom of association under the First Amendment, have caused, and will continue to cause, Plaintiff to suffer undue and actual hardship and irreparable injury.

308.

Defendants' policies, practices, and customs are vague.

309.

Dr. Walsh has no adequate remedy at law to correct the continuing deprivations of his most cherished constitutional liberties.

310.

As a direct and proximate result of Defendants continuing violations of Dr. Walsh's rights, Dr. Walsh has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

311.

The actions of the Defendants violate the First Amendment rights of Dr. Walsh as guaranteed to Dr. Walsh by the United States Constitution and are further a violation of 42 U.S.C. § 1983.

312.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective relief only from Defendants DPH Officials in their official capacities, as follows: job reinstatement, declaratory judgment and injunctive relief, as well as attorney's fees and costs, all as set out in the prayer for relief.

313.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective and other relief from Defendants DPH Officials in their individual capacities, to include without limitation: job reinstatement, declaratory judgment, injunctive relief, equitable damages, compensatory and/or nominal damages, and punitive damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

314.

Defendant DPH, as a named entity, is not a defendant under this Count Five, with Dr. Walsh instead seeking prospective relief from all other Defendants in their official capacities.

**Count Six: Violation of Fourteenth Amendment Right to Equal Protection (42 U.S.C. § 1983)**

315.

All foregoing paragraphs in this Complaint are re-alleged and incorporated by reference.

316.

The actions of the Defendants, as alleged herein, violate the Fourteenth Amendment equal protection rights of Dr. Walsh as guaranteed by the United States Constitution, and were carried out pursuant to DPH policies, practices and/or customs.

317.

Defendant DPH's policies, practices, and/or customs, on their face and as applied to Dr. Walsh are in violation of the Equal Protection Clause of the Fourteenth Amendment, and infringe upon Dr. Walsh's fundamental rights to freedom of speech, freedom of religion and freedom of association, among other fundamental rights.

318.

More particularly, Defendants investigation of Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices to determine whether to terminate or refuse to hire Dr. Walsh, and Defendants' termination of or

refusal to hire Dr. Walsh because of his religious faith, beliefs, speech, viewpoint, expression, association and/or practices, pursuant to Defendants' policies, practices and/or customs, violate the Fourteenth Amendment equal protection rights of Dr. Walsh as guaranteed by the United States Constitution.

319.

The District Health Directors employed by DPH to oversee the approximately eight other health districts in the State of Georgia, or applicants or conditional hires for same, at all times relevant herein were and are similarly situated to Dr. Walsh.

320.

Defendants' specifically targeted and investigated Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices to determine whether to terminate or refuse to hire Dr. Walsh, intentionally and unlawfully discriminating against him and treating him differently and unequally from other similarly situated DPH employees, applicants or conditional hires.

321.

Defendants terminated or refused to hire Dr. Walsh because of his religious faith, beliefs, speech, viewpoint, expression, association and/or practices, intentionally and unlawfully discriminating against him and treating him

differently and unequally from other similarly situated DPH employees, applicants or conditional hires.

322.

The Fourteenth Amendment of the United States Constitution and specifically the Equal Protection Clause of the Fourteenth Amendment protects a person from unequal treatment by the government.

323.

Religion is an inherently suspect classification under the Equal Protection Clause.

324.

Dr. Walsh, as a devout Christian and member of a Christian church and denomination, belongs to a protected class.

325.

Defendants' policies, practices, customs and actions are unconstitutional abridgements of Dr. Walsh's affirmative right to equal protection of the laws, are not facially neutral, and specifically target Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

326.

Defendants' policies, practices, customs and actions are unconstitutional

because they treat and treated religious faith, beliefs, speech, viewpoint, expression, association and/or practices differently than they treat secular or non-religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

327.

Defendants' policies, practices, customs and actions are unconstitutional because they treat and treated Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices differently than they treat and treated religious faith, beliefs, speech, viewpoint, expression, association and/or practices that adhere to other religions or to beliefs, faith and doctrine other than that of Dr. Walsh.

328.

Defendants' policies, practices, customs and actions are unconstitutional abridgements of Dr. Walsh's right to equal protection of the law because Defendants treat and treated Dr. Walsh differently from other similarly situated individuals on the basis of Dr. Walsh's religious faith, beliefs, speech, viewpoint, expression, association and/or practices.

329.

Defendants' policies, practices, customs and actions are not supported by a permissible, let alone compelling, governmental interest sufficient to justify its

enactment or unequal enforcement against Dr. Walsh.

330.

Defendants policies, practices, customs and actions are not the least restrictive means or even narrowly tailored to accomplish any legitimate or permissible government purpose sought to be served by the policies, practices, customs and actions.

331.

Defendants policies, practices, customs and actions do not serve a significant government interest.

332.

Defendants policies, practices, customs and actions do not leave open ample alternative channels of communication.

333.

Defendants policies, practices, customs and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on Constitutionally protected speech and activity.

334.

The failure of the Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to adopt clear and concise written policies which protect

the Equal Protection rights of Dr. Walsh caused the unlawful discrimination and unequal treatment by Defendants.

335.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, direct, control and supervise the actions and conduct of Defendants and the failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to do so has resulted in the violation of Dr. Walsh's Constitutional rights.

336.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to repudiate the unlawful and discriminatory actions and conduct of Defendants.

337.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to discipline Defendants for their unlawful and discriminatory conduct.

338.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to immediately act to remedy the unlawful and discriminatory conduct of Defendants.

339.

Defendant Fitzgerald, in her official capacity as Commissioner of DPH, failed to properly train, control and supervise the actions and conduct of Defendants which amounts to deliberate indifference and a violation of the Equal Protection Clause of the Fourteenth Amendment.

340.

The deliberate indifference and failure of Defendant Fitzgerald, in her official capacity as Commissioner of DPH, to act after having knowledge and notice of the unequal, unlawful and discriminatory conduct and actions of Defendants amounted to an endorsement and adoption of Defendants unconstitutional conduct and constitutes a continuing violation of Dr. Walsh's Constitutional rights.

341.

Defendants DPH Officials, in their individual capacities, are not entitled to qualified immunity because they had fair notice that their actions and conduct violated clearly established law at the time that they took the actions in question, to include without limitation their unlawful investigation into his religion to determine whether to terminate or refuse to hire Dr. Walsh and their terminating or refusing to hire Dr. Walsh.

342.

Defendants DPH Officials, in their individual capacities, acted with reckless and callous indifference to the lawful and Constitutionally protected rights of Dr. Walsh.

343.

Defendants, in violation of the Equal Protection Clause, have caused, and will continue to cause, Plaintiff to suffer undue and actual hardship and irreparable injury.

344.

Defendants' policies, practices and customs are vague.

345.

Dr. Walsh has no adequate remedy at law to correct the continuing deprivations of his most cherished constitutional liberties.

346.

As a direct and proximate result of Defendants continuing violations of Dr. Walsh's rights, Dr. Walsh has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

347.

The actions of the Defendants violate the Fourteenth Amendment rights of Dr. Walsh as guaranteed to Dr. Walsh by the United States Constitution and are further a violation of 42 U.S.C. § 1983.

348.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective relief only from Defendants DPH Officials in their official capacities, as follows: job reinstatement, declaratory judgment and injunctive relief, as well as attorneys' fees and costs, all as set out in the prayer for relief.

349.

Because of these violations of this constitutionally guaranteed right, Dr. Walsh seeks prospective and other relief from Defendants DPH Officials in their individual capacities, to include without limitation: job reinstatement, declaratory judgment, injunctive relief, equitable damages, compensatory and/or nominal damages, and punitive damages, as well as attorney's fees and costs, all as set out in the prayer for relief.

350.

Defendant DPH, as a named entity, is not a defendant under this Count Six,

with Dr. Walsh instead seeking prospective relief from all other Defendants in their official capacities.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests this Court grant the following relief against Defendants in their respective capacities as plead elsewhere herein:

(a) Issue a declaratory judgment that Defendant DPH's acts, policies, practices, customs and procedures complained of herein, on their face and as applied to Plaintiff, violate and violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended;

(b) Issue a declaratory judgement that Defendants DPH Officials' acts, policies, practices, customs and procedures complained of herein, on their face and as applied to Plaintiff, are unconstitutional because they violated Plaintiff's rights as secured by 42 U.S.C. § 1983 and Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution to free speech, free association, free exercise, no religious test and equal protection;

(c) Permanently enjoin Defendants DPH Officials from implementing, continuing and enforcing their unlawful acts, conduct, policies, practices, customs, rules and procedures of taking and allowing adverse employment action against Dr. Walsh for his protected religious faith, beliefs, speech, viewpoint, expression,

association and/or practices in violation of 42 U.S.C. § 1983 and Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution to free speech, free association, free exercise, no religious test and equal protection;

(d) Order Defendants to make Plaintiff whole by providing for his back pay, reinstatement (or front pay in lieu thereof), and other benefits and expenses in an amount to be proven at trial;

(e) Grant to Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon him by Defendants' unlawful and discriminatory acts, including without limitation his pain and emotional distress, humiliation, loss of reputation, inconvenience and finding new employment;

(f) Grant to Plaintiff pre-judgment interest on any pecuniary awards provided;

(g) Grant to Plaintiff punitive damages and nominal damages for violation of his rights under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution;

(h) Grant to Plaintiff his costs in this action and a reasonable attorneys' fee as provided by 42 U.S.C. §§ 1988 and 2000e-5(k), and other law; and

(i) Grant such additional relief as this Court deems proper and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

*/s/ Andrew Y. Coffman*
Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile

Roger Byron (*pro hac vice to be filed*)
rbyron@firstliberty.org
Jeremy Dys (*pro hac vice to be filed*)
jdys@firstliberty.org

FIRST LIBERTY INSTITUTE
2001 W. Plano Pky., Suite 1600
Plano, Texas 75075
(972) 941-4444 Telephone
(972) 941-4457 Facsimile